| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date and Time:<br>9/15/2011 at 10:00 a.m. |

------------------------------------------------------------x

In re:                                                    Chapter 7

Arbco Capital Management, LLP,                            Case No. 07- 13283 (SCC)

                          Debtor.        Hon. Shelley C. Chapman

------------------------------------------------------------x

Richard O'Connell, as chapter 7 Trustee of the
estate of Arbco Capital Management, LLP,

                          Plaintiff,

          - against-                                   Adv. Pro. No. 09-01528

Hayim Regensberg, DVP Global Trading LLC,
And Ira D. Tokayer, Esq. as Escrow Agent, Reuben
Taub, Hindy Taub, Midwest Trading LLC,

                          Defendants.

------------------------------------------------------------x

## DECLARATION IN FURTHER SUPPORT TO MOTION
## FOR LEAVE TO AMEND COMPLAINT AND IN REPLY TO
## OPPOSITION OF REUBEN AND HINDY TAUB

STATE OF NEW YORK    )
                             )ss.:
COUNTY OF NEW YORK  )

        J. Ted Donovan declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

        1.    I am an associate with the law firm of Goldberg Weprin Finkel Goldstein LLP. I am fully familiar with the facts and circumstances of this matter, and submit this declaration in further support of the Trustee's[1] motion for leave to amend the

---

[1] Capitalized terms have the same meaning defined in the original motion.

complaint herein pursuant to Bankruptcy Rule 7015, and in response to the opposition to the motion filed by Reuben and Hindy Taub (jointly, the "Taubs").

**Preliminary Statement**

2. Ignoring the well established precedent that leave to amend a complaint is "freely given," the Taubs responded with a 36 page memorandum of law that is essentially a motion to dismiss the complaint. Unfortunately, the response fails its purpose of narrowing issues and clarifying positions, and instead goes off on tangents into statutory and doctrinal considerations that are simply not applicable to this adversary proceeding.

3. At its heart, the amended complaint is predicated on the fact that Regensberg and the creditors of DVP, Midwest and Arbco all treated the three corporations as one single entity. Therefore, the Trustee contends, this Court should do likewise, and treat the assets of DVP and Midwest as assets of Arbco.

4. The single most important evidence supporting the Trustee's position is that the Taubs' themselves accepted payment from Arbco and applied it against the debt owed to them by DVP. Perhaps understandably, the Taubs fail to address this fact in their motion papers.

5. Instead, the Taubs mis-cite to a statute of limitations which does not address the relief sought by the Trustee, miscomprehend the basic thrust of the Trustee's allegations and mistakenly expound at length upon the Wagoner Doctrine, which is not implicated by this action.

2

6. The Trustee's proposed amended complaint argues the simple proposition that since the outstanding debts of DVP and Midwest were paid with assets of Arbco, then the assets of DVP and Midwest should be property of Arbco, available to be administered by the Trustee for the benefit of all of the remaining creditors of all three entities.

7. It is the Trustee's position that since the creditors of Arbco, including the Taubs, and Arbco's owner, Hayim Regensberg, both ignored the separate corporate identities of Arbco, Midwest and DVP, this Court should follow suit and treat the three companies as one unified entity.

8. Notably, only the Taubs oppose the motion. None of the other creditors of DVP and Midwest contest the requested relief. Moreover, neither of the two shareholders of DVP, Eric Rothner and Hayim Regensberg, oppose the Trustee's motion to amend the complaint.

9. Accordingly, the Trustee respectfully submits that this Court should grant the requested relief and permit this case to move forward through the amending of the complaint so that issue may be joined and discovery can commence.

## Background

10. As alleged in the Amended Complaint, Regensberg initially operated through DVP to make stock trades on behalf of himself and his partner, Eric Rothner. Thereafter, he expanded to make trades and investments on behalf of customers, such as the Taubs. After DVP lost over $3,500,000 in a short span of time in December 2001,

Rothner declined to invest more funds, but Regensberg continued to made trades on a much reduced basis, both for himself and for his customers.

11. In 2004, Regensberg switched his operations from DVP to Midwest, and later from Midwest to Arbco. The complaint alleges that as each new company came into operating, it assumed the liabilities and took control of assets from the prior entity, without any formal transfer documents.

12. Thus, for example, a person who invested with Midwest just before it ceased operating was paid his "profits" from Arbco.

13. During this period Regensberg began to operate a Ponzi style scheme whereby he stopped making the trades requested by his clients, instead using their investments and loans to distribute phony profits and repay loans to other customers, all the while losing money through high risk day trading.

14. Ultimately, upon learning of Regensberg's fraud, the creditors of Arbco, led by the Taubs, put that company into an involuntary bankruptcy, but not DVP or Midwest.

15. After being appointed, the Trustee discovered that not all of the assets of DVP were transferred to Midwest and then to Arbco, as he learned that the Escrow Fund held by Tokayer remained in title to DVP.

16. The Escrow Fund arose from a lawsuit initially commenced by Regensberg to recover the money lost by DVP in December 2001. During the summer of 2007, while his Ponzi scheme was collapsing, Regensberg amended the complaint and added DVP as a party Plaintiff. Then, just as Arbco was being placed into bankruptcy, a

settlement was negotiated that placed 100% of the proceeds into DVP, with Regensberg receiving nothing despite having been the original Plaintiff. Then, apparently the same week Regensberg was arrested, some $485,000 was paid into the Escrow Fund.

17. As both Regensberg and the creditors treated DVP, Midwest and Arbco as one entity, the Trustee contends that this Court should as well, such that the Escrow Fund should be property of the Arbco bankruptcy estate. Therefore, the Trustee seeks to amend his complaint for turnover of the Escrow Fund (i) to include specific allegations for piercing the corporate veil between the three companies, and (ii) to add as party defendants all of the known creditors of DVP and Midwest so that they can have an opportunity to be heard.

18. While this adversary proceeding was pending, with full knowledge that the Trustee had asserted entitlement to the Escrow Fund, the Taubs raced to the state courts, obtained a default judgment against DVP by serving their papers through the Secretary of State, instead of serving either Regensberg or his co-owner, Eric Rothner, and then seeking to enforce the default judgment against the Escrow Fund. When Tokayer declined to turn over the Escrow Fund, the Taubs, without notice to the Trustee, commenced a special proceeding asserting a first right to the Escrow Fund.

19. After the Trustee finally learned of the special proceeding from Tokayer, the Trustee intervened, and then sought to remove the action to this Court, which motion was denied, after this Court held it lacked jurisdiction to determine the competing claims to the Escrow Fund.

5

20. The Trustee has asserted before the Supreme Court that DVP, Midwest and Arbco are one unified entity, and thus the assets of DVP are, and have always been assets of this bankruptcy estate, rendering the Taubs' actions subject to the automatic stay. The Supreme Court recently ruled that the Trustee should have an opportunity to litigate these claims prior to trial. In response, the Trustee filed the instant motion to have a determination made of whether the assets of DVP should be administered as assets of this bankruptcy estate.

21. At the same that the Trustee filed the instant motion for leave to amend the complaint, he sought a stay in the Supreme Court, which has been granted on an interim basis until October 6, so that the Supreme Court will have the benefit of this Court's decision on the instant motion before deciding whether or not to continue the stay while this action is litigated.

22. In the interim, DVP, through Eric Rothner, moved to vacate the default judgment. That motion was scheduled to be heard on September 8, 2011, but was adjourned to October after DVP's counsel withdrew from the litigation over a fee dispute.

## Argument

### 1. Leave to Amend the Complaint Should Be Freely Given

23. Federal Rule 15(a)(2) provides that after issue is joined, pleadings may be amended with leave of the Court. The rule further provides that "The court should freely give leave when justice so requires."

24. Rule 15 was explained in some detail by one Court as follows:

> Generally, leave to amend should be granted freely, and amendment is typically permitted in the absence of any apparent undue delay, bad faith, undue prejudice or futility. See Foman v. Davis, 371 U.S. 178, 182, 9 L.Ed.2d 222, 83 S.Ct. 227 (1962); Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 28 (2d Cir.1995). The Second Circuit informs that delay alone, in the absence of a showing of bad faith or prejudice, is not a sufficient basis for denying leave to amend. See Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993). However, a proposed amendment may be especially prejudicial when discovery has already been completed and the defendant has filed a motion for summary judgment. Krumme v. West Point Stevens, Inc., 143 F.3d 71, 88 (2d Cir.1998). Nevertheless, "the decision of whether to allow leave to amend is left to the sound discretion of the district court, [and] there must be good reason to deny the motion." Acito v. Imcera Group, Inc., 47 F.3d 47, 55 (2d Cir.1995); see also Foman, 371 U.S. at 182.

U.S. v. Mazzeo, 2001 WL 393671, *2 (E.D.N.Y. 2001).

25. The Trustee submits that the Taubs have not met their heavy burden of establishing any of the four factors of bad faith, undue delay, prejudice or futility, which would overcome the well established precept that leave to amend a complaint should be freely given.

26. There has been no allegation that the Trustee is proceeding in bad faith. Moreover, while this adversary proceeding has been open for some time, given the posture both of this proceeding and the Supreme Court action, as well as the difficulties always encountered by a Trustee in litigating, when he was not a party to the underlying transactions, the Trustee submits that there has been no undue delay.

27. Additionally, despite their generalized statements to the contrary, the Taubs do not identify any specific prejudice they will suffer if the Trustee's motion is

7

granted. In fact, in light of their conduct in obtaining a default judgment against DVP without serving either principal of the company, and then commencing the special proceeding without notice to the Trustee, the Taubs are hardly in a position to accuse anyone else of acting in a prejudicial manner.

28. In their opposition papers, the Taubs focus largely on the final factor, asserting primarily three arguments why the amended complaint will not survive a motion to dismiss: (1) the Trustee has not set forth sufficient detailed facts, and so should not be permitted to amend the complaint; (2) the statute of limitations has passed; and (3) the alter ego claims contained in the proposed amended complaint are barred by the Wagoner rule. All three of these arguments are incorrect as a matter of law.

### 2. The Amended Complaint Pleads Sufficient Facts to Survive a Motion to Dismiss

29. The Taubs assert that the Trustee's allegations are too vague, and rely too much "upon information and belief" to survive a motion to dismiss.

30. In 2007, the United States Supreme Court reformulated the standards for a Rule 12(b) dismissal motion, holding that under the liberal standard of Fed. R. Civ. Pro. 8, a plaintiff need not provide specific facts to support its allegations, but needs only:

> factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [citations omitted] The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). This marks a departure from the more liberal standards of "no set of conceivable facts" announced by the Supreme Court in

Conley v. Gibson, 355 U.S. 41 (1957), but still falls well short of establishing a probability requirement.

Thus, even under the recent Supreme Court precedent, the Court's function remains unchanged: In considering a motion to dismiss under Rule 12(b)(6), "[t]he Court's function . . . is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" Jenkins v. New York City Transit Authority, 646 F.Supp.2d 464 (S.D.N.Y. 2009) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether the plausibly give rise to an entitlement to relief." Iqbal, supra at 1950.

31. Moreover, given the unique position of the Trustee, the pleadings are more liberally construed, "because the trustee is a third party outsider to the transaction and must plead . . . based upon second hand knowledge." In re Manhattan Investment Fund Ltd., 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002), aff'd 397 B.R. 1 (S.D.N.Y. 2007).

32. The Trustee submits that sufficient facts has been alleged in support of his contention that DVP, Midwest and Arbco should be treated as one unified entity, and that he easily meets the standards for surviving a motion to dismiss.

33. The Taubs misapprehend the thrust of the Trustee's allegations and theory of the case. Throughout their papers, the Taubs refer to efforts by the Trustee to hold DVP liable for the debts of Arbco, stating on page 18 of the Memorandum of Law, for example, that "the Trustee must show that DVP dominated Arbco or Midwest and

that such domination by DVP was used to commit a fraud against the Debtor and that as a result the Debtor was injured."

34. The Trustee does not contend that DVP, Arbco or Midwest harmed the creditors, but that Regensberg did. The Trustee further contends that it was Regensberg who dominated all three companies, DVP, Midwest and Arbco. It was Regensberg who used the assets of the three companies without regard to the inherent separateness of the corporate entities, and who paid liabilities of the each of the three companies with funds from the others, and accordingly, this Court should also treat the three companies as one unified entity.

35. In their opposition papers, the Taubs note that substantive consolidation in particular is used sparingly, and is employed under even more restrictive standards when a complaint seeks to consolidate non-debtors with a debtor.

36. On page 33-34 of their Memorandum of Law, the Taubs correctly cite that the key factor is whether creditors dealt with the debtors as a single economic unit and did not rely on the separate identity of a debtor in extending credit. Indeed, how creditors dealt with the separate corporate entities is a key consideration for all of the legal theories put forward by the Trustee in the proposed amended complaint as the basis for treating the three companies as one unified entity.

37. In this regard, therefore, it is telling that the Taubs never address the single most important fact in this case, as alleged in paragraph 47 of the proposed Amended Complaint:

> Among the allegations contained in the complaint filed by the Taubs [against DVP] is that "On or about December 26, 2006, DVP arranged for a Fifty Thousand Dollar ($50,000) partial payment of the Loan to the plaintiffs." In fact, the partial repayment of the loan was made to the Taubs by Arbco.

38. In other words, even the Taubs treated Arbco and DVP interchangeably, by accepting payment from Arbco and applying it to their claim against DVP.

39. Whether or not this will ultimately be sufficient for the Trustee to prevail at trial is not before the Court at this time. Clearly, however, the Trustee has set forth sufficient facts to survive a motion to dismiss.

### 3. There is no Applicable Statute of Limitations Barring the Proposed Amendments

40. The Taubs contend that the Trustee cannot amend the complaint because the statute of limitations in Section 546 of the Bankruptcy Code, which bars actions under Section 544, 545, 547, 549 and 553 after a set time period. While the time period for an action under those Sections admittedly passed, this adversary proceeding is, in fact, a turnover action regarding the Escrow Fund brought pursuant to Sections 541 and 542, which are not covered by the limitations of Section 546.

41. Moreover, since the Escrow Fund was only created in 2007, the Trustee is well within any New York State statutes of limitation that might apply.

### 4. The Wagoner Rule does not Apply to this Litigation

42. The Taubs also seek to deny leave to amend the complaint based upon the Second Circuit's decision in Shearson Lehman Hutton, Inc. v. Wagoner, 944

F.2d 114, 118 (2nd Cir. 1991). In that case, a bankruptcy trustee brought an action against a broker for aiding and abetting bad trades that dissipated corporate assets. In considering a motion to dismiss, the Second Circuit fashioned what is generally known as the "Wagoner Rule," holding that because a trustee is imputed to have the knowledge of the principals of the debtor corporation who participated in the fraud, a trustee lacks standing to bring an action against third parties under the precept that the corporation cannot recover for its own wrongdoing.

43. As recently made clear by the New York Court of Appeals in the case of <u>Kirschner v. KPMG LLP et al.</u>, 15 N.Y.3d 446 (2010), the Wagoner Rule remains in full force and effect in New York. However, a careful review of <u>Wagoner</u> and <u>Kirschner</u> reveals that this doctrine was developed from agency law, to prevent joint tortfeasors from collecting from one another. Here, the Trustee is not seeking judgment against DVP and Midwest as joint tortfeasors. Rather, the Trustee is seeking to pierce the corporate veil and treat these three entities in bankruptcy as the single entity they were acknowledged to be prior to the involuntary filing by both Regensberg and the creditors of the Arbco, Midwest and DVP, including the Taubs.

44. Thus, the Wagoner Rule is simply not implicated in this litigation.

WHEREFORE, the Trustee respectfully prays for the entry of an Order consistent with the foregoing, and for such other and further relief as may be proper, for which no previous application has been made to this or any other Court.

Dated: New York, NY
      September 12, 2011

_/s/ J. Ted Donovan_
J. Ted Donovan, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
(212) 221-5700